**E.I. DuPONT de NEMOURS AND COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 82–1767, 82–1903.

United States Court of Appeals, Sixth Circuit.

Argued April 3, 1984.

Decided Sept. 26, 1984.

Alan G. Burton, argued, E.I. DuPont de Nemours & Co., Legal Dept., Wilmington, Del., George E. Yund, Frost & Jacobs, Cincinnati, Ohio, for petitioner.

Elliott Moore, L. Pay Wynns, argued, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Before LIVELY and WELLFORD, Circuit Judges, and GIBSON, District Judge.*

PER CURIAM.

DuPont operates a synthetic textile fibers plant that employs some 1,600 hourly production and maintenance workers at Old Hickory, Tennessee. The plant is one of a number in the company's textile fibers division, which encompasses approximately 25,000 employees. The Old Hickory employees are represented by an independent union, the Old Hickory Employees Council. It was stipulated that the production and maintenance employees at Old Hickory "perform duties and possess skills and experience" comparable to those of other DuPont employees in the textile fibers division.

The local union president made a letter request to DuPont to negotiate for new wage rates in February 1981, and bargaining sessions began the next month. Among other things, the union requested information on the wage scales of production and maintenance employees at other DuPont plants within the textile fibers division. DuPont reminded the union bargainers that the company reached its wage-scale decisions (and would make its future wage proposals) based on a survey of prevailing wages in the Old Hickory area. While declining to furnish the requested data on the other DuPont plants, located primarily in Virginia and the Carolinas, DuPont did furnish the union with wage data for the local comparison companies. The union, however, reiterated its need for wage information for employees whom it considered to be doing similar work at comparable DuPont facilities so that it could pursue wage negotiations on a division-wide, if not company-wide, basis. DuPont made a wage offer in April 1981. The union charged that the offer failed to reflect its position about plant-to-plant comparisions within the textile fibers division, but the union nevertheless accepted the offer. The union then filed an unfair labor practice charge against DuPont alleging violations of 29 U.S.C. § 158(a)(5) and (1).[1]

Agreeing with the Administrative Law Judge, the NLRB found that DuPont violated these sections of the National Labor Relations Act by refusing to furnish the requested information.[2] The Board there-

---

* The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation.

1. Section 158(a)(5) forbids an employer "to refuse to bargain collectively with the representatives of his employees." "To bargain collectively" is defined by § 158(d) as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder." Section 158(a)(1) forbids an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in § 157; the rights guaranteed in § 157 include the right of employees "to bargain collectively through representatives of their own choosing."

2. Other information requested by the union, including the sales and earnings of the Old Hickory plant, was found not relevant to the union's statutory duties concerning the wage negotiations.

538

fore ordered the company to furnish the information and to post a notice to this effect. DuPont has filed a petition for review, and the Board has filed a cross-application for enforcement of its order. This Court has jurisdiction under 29 U.S.C. § 160(e)–(f).

The issue in this case is a narrow one: was the wage data of other DuPont plants relevant and necessary to the bargaining process at Old Hickory? DuPont takes the position that the Board failed to employ the proper legal standard in determining the relevancy of the requested nonunit wage information, arguing that it should have required a "special showing of pertinence" before requiring production of the nonunit data.

 When a union seeks information concerning the bargaining unit itself, that information is presumptively relevant and will be ordered disclosed without any showing of relevance by the union unless the employer itself rebuts the presumption. When a union seeks nonunit information, however, the burden is upon the union, and in this case upon the General Counsel, to establish relevance without the benefit of any presumption. *NLRB v. Rockwell-Standard Corp.*, 410 F.2d 953, 957 (6th Cir.1969); *see also NLRB v. Leland Stanford Junior Univ.*, 715 F.2d 473, 474 (9th Cir.1983); *Curtiss-Wright Corp. v. NLRB*, 347 F.2d 61, 69 (3d Cir.1965). The Board's determination concerning whether information is relevant to the collective bargaining process is entitled to deference from the courts. *See Stanford*, 715 F.2d at 474; *Press Democrat Publishing Co. v. NLRB*, 629 F.2d 1320, 1326 (9th Cir.1980); *NLRB v. Brazos Elec. Power Co-op., Inc.*, 615 F.2d 1100, 1101 (5th Cir.1980). The Board need only find a "probability that the desired information [is] relevant ... and that it would be of use to the union in carrying out its statutory duties and responsibilities." *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967); *see also Rockwell-Standard*, 410 F.2d at 957; *General Elec. Co. v. NLRB*, 466 F.2d 1177, 1182 (6th Cir.1972).

Each case involving this issue "must turn upon its particular facts. The inquiry must always be whether or not under the circumstances ... the statutory obligation to bargain in good faith has been met." *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 153–54, 76 S.Ct. 753, 756, 100 L.Ed. 1027 (1956) (footnote omitted).

Most of the cases addressing requests for nonunit information have involved information that the union claims to need to determine whether the employer has violated the employment agreement. *See, e.g. Acme Indus.*, 385 U.S. 432, 87 S.Ct. 565 (1967) (union granted access to information concerning the whereabouts of machines removed from a plant when union members would have had right to transfer if the machines were moved to another plant). In this context, several courts have stressed that a union's demonstration of the relevance of nonunit information must involve something more than the formulation of a merely general theory. Instead, those courts have required "some initial, but not overwhelming," showing by the union that the information actually is important. *Stanford*, 715 F.2d at 474 (quoting *San Diego Newspaper Guild v. NLRB*, 548 F.2d 863, 869 (9th Cir.1977)).

Courts have required an initial showing of relevance to prevent needless and expensive explorations by unions into company records. Unions do not have carte blanche to examine employer information merely because the union can articulate some bargaining strategy that will render the information pertinent in some peripheral or theoretical fashion to the bargaining process. "[T]he union's theory of relevance must be reasonably specific; 'general avowals of relevance' such as 'to bargain intelligently' and similar boilerplate are insufficient." *Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1099 (1st Cir.1981).

 We agree with the Board's conclusion in this case that the requested information was shown to be relevant, and we also conclude that the information was "reasonably necessary ... to [the] union's role as bargaining agent" for the avowed

purpose of seeking a new method for setting wages.[3] *See Curtiss-Wright,* 347 F.2d at 68. There was a sufficient showing, on the facts of this particular case, that the nonunit information sought was relevant and reasonably necessary for the union to bargain effectively on the wage scales. The Board required more than theoretical relevance; for example, it expressly found that the information request pertained to a good-faith wage proposal. The company has not argued that this finding lacked the support of substantial evidence.[4]

The order of the NLRB is therefore enforced.

3. This is not to say that the Board might not reasonably have limited its requirement of information production to fewer textile fibers plants nearest to Old Hickory in size and geographic location if it had believed that course to be warranted.

4. The company maintains that endorsement of the Board's approach in this case will render meaningless the Supreme Court's statement in *Truitt* that a case like this "must turn upon its particular facts." 351 U.S. at 153, 76 S.Ct. at 756. According to the company, the Board's

approach will permit unions to discover virtually any information a company possesses merely by fabricating a wage proposal somehow linked to the desired information. That argument, however, neglects the Board's examination of the union's good faith in formulating the proposal here. Moreover, that information is relevant does not inevitably mean that nondisclosure will violate the duty to bargain in good faith. *See, e.g., Detroit Edison Co. v. NLRB,* 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979) (confidential information).