915 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLESCO MANUFACTURING DIVISION OF CLEVELAND SALES COMPANY,
Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.
 Nos. 89-5223, 89-5286.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1990.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner Clesco Manufacturing Division of Cleveland Sales Company (Clesco) seeks review of the National Labor Relations Board's order finding that petitioner committed an unfair labor practice in polling its employees to determine their union sentiments, and that petitioner bargained in bad faith. Respondent National Labor Relations Board (the Board) seeks enforcement of the order.
 
 
 2
 In May 1983, the union was certified as the exclusive collective bargaining representative of a unit consisting of six or seven Clesco employees.[1] The union and Clesco entered into a contract in September 1983, to expire in September 1986. In June 1986, the union notified Clesco that it wished to negotiate a new contract. In July, Clesco suggested that the union send Clesco its contract proposals, and notified the union that they were going to poll the employees. James Davis, a union representative, testified that Clesco's president, Thomas Malak, told him that the employees would learn with time that they were better off without a union and that negotiations would be a waste of time because the employees were going to be polled. Malak denied making that statement. Malak testified that he believed a ballot was appropriate because two of the employees had expressed dissatisfaction with the union, and he believed another employee to be against unions on religious grounds.
 
 
 3
 A poll was conducted on August 8, 1986. Of the six employees who were present for the secret ballot, three indicated that Clesco still needed a union, two indicated that Clesco did not need the union, and one did not mark his ballot. One employee testified that Malak told employees before the vote that the union approved of the balloting. Malak denied making that statement.
 
 
 4
 Following the ballot, negotiations began between Clesco and the union. The first meeting was held on August 13, 1986. At that time Clesco rejected the union's proposals for a new contract, and proposed a one year extension of the present contract. The union rejected Clesco's proposal. The union and Clesco continued to meet until November, and throughout that time Clesco continued to insist on a one year extension to expire September 11, 1987. Clesco stated that the general conditions within their industry were too uncertain for them to enter into a contract for more than one year.
 
 
 5
 In December 1986, an employee, Sean Mulhearn, filed a decertification petition. The union filed an unfair labor practice complaint. A settlement agreement was reached in February, and the petition was withdrawn.
 
 
 6
 Meetings resumed in April 1987. The parties did reach a tentative agreement on some issues. They remained far apart on wages and on the expiration date. At a meeting in May 1987, the union proposed a May 1988 expiration date, which Clesco rejected. The final meeting was held in June. Clesco continued to insist on a September 1987 expiration date, and no contract agreement was ever reached. In November 1987, Clesco informed the union that it no longer believed that the union had majority support, and that it would therefore no longer recognize the union as the representative of its employees. This attempted withdrawal of recognition is not alleged as a violation of the National Labor Relations Act.
 
 
 7
 In May 1987, Sean Mulhearn filed another decertification petition. The Regional Director dismissed the petition, set aside the former settlement agreement, and issued a consolidated complaint to the Administrative Law Judge (ALJ). The ALJ held that Clesco violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act by polling its employees and bargaining in bad faith. The primary basis for concluding that Clesco bargained in bad faith was its continued insistence on a September 1987 expiration date which was only three months away. That date would require the union to have to begin bargaining on a new contract almost immediately. The ALJ ordered Clesco to cease and desist from polling the employees and refusing to bargain in good faith. The ALJ also ordered Clesco to bargain with the union and to post an appropriate notice at the workplace. The Board adopted the ALJ's order.
 
 
 8
 Clesco asserts that the Board erred in holding that it bargained in bad faith. Clesco claims that it refused to agree to a contract of more than one year in duration because its business was operating under a considerable amount of uncertainty due to foreign competition and general economic conditions. Clesco points out that it met with union officials many times over the course of several months. Clesco also made offers of concession on several issues, but never offered to extend the contract past September 1987. The Board, however, in adopting the ALJ's memorandum and order, concluded that Clesco was not motivated by economic conditions, but instead was bargaining in bad faith. This Court will uphold the Board's findings unless there is no substantial evidence to support them. NLRB v. Hospitality Motor Inn, Inc., 667 F.2d 562, 563 (6th Cir.), cert. denied, 459 U.S. 969 (1982).
 
 
 9
 "[G]ood faith bargaining does not require that [a] Company ... make proposals that are acceptable to the Union." Pease Co. v. NLRB, 666 F.2d 1044, 1049 (6th Cir.1981), cert. denied, 456 U.S. 974 (1982). Clesco argues that the insistence on a contract of short duration cannot be considered bad faith bargaining. Clesco cites two cases in support of that argument, Atlanta Hilton and Tower, 214 N.L.R.B. 1600 (1984) and Lloyd A. Fry Roofing Co., 123 N.L.R.B. 647 (1959). In Fry, the employer insisted on an expiration date that coincided with the end of the certification year. The Board held that the contract demand was not a violation of the Act because the employer had a good faith belief that the union had lost support among the employees. Therefore, even though the expiration date was only four months from the last negotiations, the reason for that particular expiration date did not change as time passed. In Atlanta Hilton, the company insisted on a one year extension because of general economic conditions. The Board held that the company's insistence on a contract of less than one year was not a violation of the Act.[2] "The Company's firmness in insisting on a 1-year extension of the current contract does not of itself constitute bad faith." Atlanta Hilton, 214 N.L.R.B. at 1603. Neither Atlanta Hilton nor Fry held that insistence of a contract of short duration cannot constitute bad faith bargaining, but only that it did not in those cases. Continuing to insist on a contract of less than one year can at some point properly be considered as evidence of bad faith bargaining. The Board found that when there were only three months before the demanded expiration date, that evidence plus other circumstances warranted concluding that the Clesco bargaining was in bad faith. "It is necessary to scrutinize an employer's overall conduct to determine whether it has bargained in good faith." Atlanta Hilton, 214 N.L.R.B. at 1603.
 
 
 10
 In Huck Manufacturing Co. v. NLRB, 693 F.2d 1176, 1188 (5th Cir.1982), the court held that Huck bargained in bad faith when it continued to insist on a December 12 expiration date, even when the negotiations continued into November. A similar situation exists here. Although it was not unreasonable at the beginning of negotiations for Clesco to insist on an expiration date of September 1987, the Board could find that it became unreasonable as time passed. At the last meeting in June, Clesco was insisting on a three month contract when it had originally stated that the future was too uncertain to commit to more than one year. The future, however, became less uncertain as the September expiration date approached. Given Clesco's continued insistence on a September expiration date, there was substantial evidence to support the Board's determination that Clesco bargained in bad faith.
 
 
 11
 Clesco next argues that because a settlement agreement was reached in February 1987 on the issue of whether it committed an unfair labor practice in polling its employees, this Court does not have jurisdiction over that issue. That settlement agreement, however, was set aside by the Regional Director who specifically consolidated it with the issue of bad faith bargaining and thereby placed it within the jurisdiction of the ALJ. In view of the finding of bad faith bargaining, the Regional Director was justified in setting aside the settlement. The issue is therefore properly before this Court.
 
 
 12
 The standard of review applied in these cases is well established:
 
 
 13
 The Board's findings of fact must be upheld if they are supported by substantial evidence on the record considered as a whole. The Board's application of the law to the facts is also reviewed under the substantial evidence standard, and the Board's reasonable inferences may not be displaced on review.
 
 
 14
 NLRB v. United States Postal Service, 841 F.2d 141, 144 (6th Cir.1988) (citations omitted).
 
 
 15
 The Board found that the poll was an unfair labor practice for two reasons. First, the employer did not have a good faith belief that the union had lost support. Second, falsely telling the employees that the union had approved of the poll, Clesco interfered with the employee right not to participate in it.
 
 
 16
 In Thomas Industries, Inc. v. NLRB, 687 F.2d 863 (6th Cir.1982) this Court held that an employer may be justified in polling its employees even if there is not enough evidence to justify withdrawal of recognition. "The key inquiry is whether the Company had substantial, objective evidence of loss of support for the Union." Id. at 867 (emphasis in original). The evidence need not establish that a majority of employees no longer support the union. The test is whether the employer had a good faith belief based on objective evidence that the union had lost support among the employees. The Board found that Clesco did not have such a belief. Clesco, however, claims that it conducted the poll because it believed that the union no longer enjoyed majority support from the bargaining unit. Of the six employees in the bargaining unit, two had expressed their dissatisfaction with the union, and a third employee was believed to be against unions for religious reasons.
 
 
 17
 There was objective evidence that the union had lost support among the employees. Given the small size of the bargaining unit, two employees is a significant number.[3] Testimony of the discussions with those employees is evidence that they no longer supported the union. There was no contrary evidence. The Board's finding that Clesco did not have a good faith belief is not supported by substantial evidence.
 
 
 18
 The issue remains, however, whether Clesco polled its employees properly by stating that the union approved of the poll when it had not. Clesco claims that it was error for the ALJ to accept the testimony of the employee who testified that Malak told the employees that the union approved of the ballot. Determinations of witness credibility, however, are part of the ALJ's function, and will "be affirmed unless they are inherently unreasonable or self-contradictory." Id. at 866. It was not unreasonable for the ALJ to credit that testimony, and it must therefore be accepted by this Court. The ALJ found that Clesco interfered with the employees' free exercise of their right not to participate in the poll. That portion of the Board's decision holding that Clesco violated section 8(a)(1) by misrepresenting the union's approval in conducting the poll is AFFIRMED. The Board's order must, however, be modified to remove the requirement that the employer cease and desist from polling its employees concerning their union sympathies. In all other respects, the Board's order will be enforced.
 
 
 19
 Section 1. (a) of the Board's order is modified to provide:
 
 
 20
 (a) Coercively polling its employees by telling them the union has given permission to such a poll.
 
 
 21
 As modified, the Board's order will be enforced.
 
 
 
 [1]
 The record is unclear as to the exact number at any particular time throughout this process
 
 
 [2]
 It is unclear whether the employer was still insisting on a May 1984 expiration as of the last meeting in October, or whether the last insistence of that date was made in July
 
 
 [3]
 The record does not discuss whether the one employee believed to be against unions on religious grounds was employed at the time of certification. If he was, his beliefs cannot be counted as a loss in union support if he never supported the union in the first place. See NLRB v. A.W. Thompson, Inc., 651 F.2d 1141 (5th Cir.1981)