952 F.2d 523
 139 L.R.R.M. (BNA) 2185, 293 U.S.App.D.C.
167, 60 USLW 2496,
120 Lab.Cas. P 11,057
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
National Labor Relations Board Union 6, Intervenor.
DEPARTMENT OF THE AIR FORCE, SACRAMENTO AIR LOGISTICS
CENTER, McCLELLAN AIR FORCE BASE, CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, AFL-CIO, Local
1857, Intervenor.
NATIONAL PARK SERVICE, NATIONAL CAPITAL REGION, UNITED
STATES PARK SERVICE, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
Police Association of the District of Columbia, Intervenor.
 Nos. 91-1044, 91-1070 and 91-1087.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 8, 1991.
Decided Jan. 7, 1992.
Rehearing and Rehearing En
Banc Denied March 6, 1992.
 
 Petitions for Review of Orders of the Federal Labor Relations Authority.
 Marc Richman, Atty., U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for petitioners in all cases.
 Richard Zorn, Atty., Federal Labor Relations Authority, with whom William E. Persina, Solicitor, William R. Tobey, Deputy Sol. and Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent in all cases.
 Joseph V. Kaplan, with whom Mark D. Roth, Charles A. Hobbie and Alexia McCaskill, Washington, D.C., were on the brief, for intervenors in all cases.
 Before EDWARDS, BUCKLEY and D.H. GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 In this consolidated case, three federal agencies petition for review from final orders of the Federal Labor Relations Authority (the "FLRA" or "Authority"), which directed the agencies to disclose certain information to the unions that represent agency employees. Under the Federal Service Labor-Management Relations Statute (the "FSLMRS" or "Statute"), unions are entitled to information that is "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," 5 U.S.C. § 7114(b)(4)(B) (1988); this entitlement stands in conjunction with an exemption covering "guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining," id. § 7114(b)(4)(C). The disputes underlying this case focus on the meaning of subsections (b)(4)(B) and (b)(4)(C), concerning when a union is entitled to information relating to "guidance, advice, counsel, or training" for management officials, and when such information is exempt from disclosure.
 
 
 2
 In all three cases before the court, the unions sought to compel agency management officials to disclose information pertaining to employee grievances. For example, the unions requested documents embodying recommendations that subordinate agency officials had provided their superiors regarding possible actions to be taken against agency employees. The agencies refused to provide the requested information, and unfair labor practice proceedings ensued. The agencies claimed that, because the documents included information on "guidance, advice, counsel, or training" for management, they need not be disclosed under § 7114(b)(4). The FLRA, however, construed § 7114(b)(4)(C) to exempt only "guidance, advice, counsel, or training" relating to the process of collective bargaining. Because the Authority found that the requested documents did not fall within the prescribed category, the agencies were ordered to "cease and desist" from nondisclosure.
 
 
 3
 We uphold the FLRA's construction of § 7114(b)(4)(C). In suggesting that the subsection exempts all information relating to guidance, advice, counsel or training, petitioners render meaningless the phrase "relating to collective bargaining" in § 7114(b)(4)(C). The plain terms of the statute indicate that Congress did not intend a blanket exemption for all such information. Even if the statute is arguably ambiguous, however, the FLRA's interpretation is reasonable and thus entitled to deference.
 
 
 4
 Information on "guidance," "advice," "counsel" or "training" for management officials that is not covered by the FLRA's construction of § 7114(b)(4)(C) must be disclosed under § 7114(b)(4)(B) if the information is "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." However, in construing subsection (b)(4)(B), the FLRA erred in failing to recognize that "necessary" is not the same as "relevant". Agencies have an important interest in deliberating over employee actions; thus, this interest cannot be ignored in the application of § 7114(b)(4)(B). In any case in which information is sought under subsection (b)(4)(B), there must be a particularized showing of need for information on "guidance," "advice," "counsel" or "training" provided for management officials if such information is not otherwise exempt under subsection (b)(4)(C). Because the FLRA failed to give full consideration to the limiting language of subsection (b)(4)(B), we remand for further consideration of this point.
 
 I. BACKGROUND
 
 5
 The Federal Service Labor-Management Relations Statute provides the framework for collective bargaining in the federal sector. If a union has been recognized as the exclusive representative of agency employees, that union and the agency are obliged to "negotiate in good faith" about "condition[s] of employment." 5 U.S.C. § 7114(b) (1988). As in the private sector,[1] the employer's obligation to bargain includes a duty to furnish the union with information pertaining to the subjects of bargaining. Under the FSLMRS, this duty is defined as follows:
 
 
 6
 The duty of an agency and an exclusive representative to negotiate in good faith ... shall include the obligation--
 
 
 7
 ... (4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data--
 
 
 8
 (A) which is normally maintained by the agency in the regular course of business;
 
 
 9
 (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and
 
 
 10
 (C) which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining.
 
 
 11
 ...
 
 
 12
 Id. The petition for review in this case concerns the scope of the § 7114(b)(4)(C) exemption, and the standard for defining when information on "guidance," "advice," "counsel" or "training" for management officials that is not otherwise exempt under subsection (b)(4)(C) must be disclosed under (b)(4)(B).
 
 
 13
 It is undisputed that the agency's duty to furnish information under § 7114(b)(4) extends to contract administration as well as contract negotiations. And "[i]t is well-settled that section 7114 creates a duty to provide information that would enable the Union to process a grievance or to determine whether or not to file a grievance." American Fed'n of Gov't Employees, Local 1345 v. FLRA, 793 F.2d 1360, 1364 (D.C.Cir.1986). The instant petition consolidates three different cases in which the agencies took action against particular employees, and the union requested information about the employees for pending or prospective grievance procedures. In each case, the agency asserted that the information sought was exempt from disclosure as "guidance," "advice" or "counsel," because it concerned a supervisor's recommendation of action, rather than the agency's final decision. The FLRA ordered disclosure, and the agencies then petitioned for review.
 
 A. Local 6 Case, No. 91-1044
 
 14
 In the National Labor Relations Board ("Local 6") case, a lawyer employed by the NLRB asked for a part-time work schedule. Her Regional Director wrote a memorandum to the Board's Assistant and Associate General Counsels, discussing the issue and providing his recommendation. The Assistant General Counsel wrote back to deny part-time employment, and this letter was released to the employee. The union filed a grievance over the denial. Before filing, and again during the grievance procedure, the union requested the Regional Director's memorandum. The NLRB refused, and an unfair labor practice proceeding ensued.
 
 
 15
 The FLRA initially decided that disclosure was "prohibited by law" under § 7114(b)(4). The Authority viewed the applicable "law" to be the "management rights" provision under section 7106 of the FSLMRS.[2] This decision was vacated and remanded in NLRB Union, Local 6 v. FLRA, 842 F.2d 483 (D.C.Cir.1988), in which the court held that "[s]ection 7106 by any reading does not prohibit the disclosure of anything." Id. at 486. The court left open the question of the significance of sections 7114(b)(4)(B) and (C).
 
 
 16
 On remand, the FLRA returned the case to an administrative law judge ("ALJ"). The ALJ found that the Regional Director's memorandum was "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," under § 7114(b)(4)(B). He reasoned:
 
 
 17
 While certain factors considered by the Regional Director were made known to the employee, the Union has no way of knowing whether other considerations may have influenced his recommendation and were included in his memorandum to Washington. The record reflects that other staff employees had worked part-time, and a claim was made that [the Regional Director] evinced hostility toward part-time employment by the legal profession. A contention that a unit employee was not permitted to engage in such employment, while others were granted such option, would make necessary the divulgence [of] the Director's recommendation to permit the Union to evaluate management's decision.
 
 
 18
 NLRB Union, Local 6, 38 F.L.R.A. 527, 534 (1989).
 
 
 19
 On review by the FLRA, the Authority agreed "that the Regional Director's recommendation was necessary for the Union to fully know and understand the basis underlying the Respondent's position on the employee's request and to determine the most appropriate course of action to take in the matter." NLRB Union, Local 6, 38 F.L.R.A. 506, 517 (1990) ("Local 6" ). The Authority also held that § 7114(b)(4)(C) was not coextensive with § 7114(b)(4)(B).
 
 
 20
 Specifically, the FLRA reasoned that "collective bargaining means the process wherein the agency and the exclusive representative are engaged in the performance of their mutual obligation to bargain," including contract negotiation and administration. Id. at 519. Thus, "section 7114(b)(4)(C) exempts from disclosure to the exclusive representative 'guidance, advice, counsel or training for management officials relating to' the collective bargaining process." Id. at 520. Paradigmatically, the FLRA ruled, exempted texts were those including information on:
 
 
 21
 (1) courses of action agency management should take in negotiations with the union; (2) how a provision of the collective bargaining agreement should be interpreted and applied; (3) how a grievance or an unfair labor practice charge should be handled; and (4) other labor-management interactions which have an impact on the union's status as the exclusive bargaining representative of the employees.
 
 
 22
 Id. at 522-23. Under this view, the FLRA found that the entire memorandum authored by the Regional Director must be furnished to the union, because the "recommendation was not guidance, advice, or counsel to management concerning the handling of a grievance or unfair labor practice charge." Id. at 523.
 
 
 23
 The NLRB did not dispute that the memorandum was "normally maintained by the agency in the regular course of business," under § 7114(b)(4)(A), or "reasonably available" under § 7114(b)(4)(B).[3] Nor did the agency contend that disclosing the memorandum was "prohibited by law." Thus, the FLRA ordered disclosure.
 
 B. National Park Service Case, No. 91-1087
 
 24
 The National Park Service case involves four different United States Park Police employees. Two were denied sick leave; two were disciplined. The union filed grievances and requested information, including various intra-agency recommendations that Park Service officials provided, apparently as part of the established agency process for disciplinary actions and sick leaves. The requests were refused.
 
 
 25
 The FLRA initially decided that the Park Service had not committed an unfair labor practice, because disclosure was "prohibited by law" under 5 U.S.C. § 7106 (1988), the "management rights" provision. This court vacated and remanded, in the same decision that remanded the Local 6 case. NLRB Union, Local 6 v. FLRA, 842 F.2d 483 (D.C.Cir.1988). As with that case, the FLRA further remanded to an administrative law judge. This time, however, the ALJ decided that § 7114(b)(4)(B) did not cover the requested information:
 
 
 26
 If management takes, or proposes to take, any action against a bargaining unit employee ..., the Union ... only needs to know what action is going to be taken together with the factual basis and rationale for the decision.... Knowledge as to which lower level supervisor recommended or concurred in any action is neither necessary nor relevant to the full understanding and discussion of the case.
 
 
 27
 Police Ass'n of the District of Columbia, 38 F.L.R.A. 1041, 1054 (1989). The ALJ also found the information to be exempt under § 7114(b)(4)(C). Id. at 1050-53. The FLRA reversed.
 
 
 28
 The Authority first applied the interpretation of § 7114(b)(4)(C) formulated in Local 6. "[T]he disputed documents were not guidance, advice, or counsel to management concerning the processing of the four grievances." Police Ass'n of the District of Columbia, 38 F.L.R.A. 1027, 1036 (1990) ("Park Service "). The FLRA then decided that the duty to disclose did apply:
 
 
 29
 [T]he Union is entitled to information which will enable it to realistically assess the strengths or weaknesses of the employee's position. In the circumstances of this case, we conclude that the recommendations and comments of the managers and supervisors were necessary for the Union to: (1) fully understand the basis underlying the [Park Service's] decision on the matter; (2) realistically assess and evaluate the merits of the employee's grievance; and (3) determine the most appropriate course of action to take in the matter.
 
 
 30
 Id. at 1037 (citation omitted). As in the Local 6 case, the FLRA then ordered disclosure, because the information was conceded to be "normally maintained" and "reasonably available," and its disclosure legally permitted.
 
 C. Air Force Case, No. 91-1070
 
 31
 The Air Force case has a simpler procedural history. The Air Force reprimanded an employee, who grieved this discipline. In preparing for arbitration, the union requested the employee's "discipline coordination sheet." The Air Force has an established process for disciplinary decisions: at an interim stage in the disciplinary process, a coordination sheet is circulated to various officials, who register their concurrence or dissent. The union sought to learn whether the same official who made the disciplinary decision had earlier concurred, by signing the coordination sheet.
 
 
 32
 An administrative law judge found that the Air Force's refusal to release that document was an unfair labor practice. The gravamen of the employee's grievance was that the deciding official "had allegedly already approved the decision to discipline [the employee] and therefore the proceedings were not fair." American Fed'n of Gov't Employees, Local 1857, 38 F.L.R.A. 978, 980 (1989). "This document would have assisted [the union] in determining, and then arguing in a grievance and arbitration, that [the official] had been involved in processing and approving the proposed discipline and therefore, arguably, was not an appropriate official" to make the final decision. Id. at 983. The ALJ also found that the discipline coordination sheet was not protected by § 7114(b)(4)(C), because it contained no "guidance, advice or counsel." The officials had simply registered their approval on the sheet, rather than providing any comments.
 
 
 33
 The FLRA affirmed. As to "necessity", the Authority found that "[t]he coordination sheet identifies Agency officials who reviewed and approved the [Air Force's] proposed decision to reprimand the employee. Moreover, as found by the [ALJ], the officials who sign the coordination sheet can significantly affect the proposed discipline." American Fed'n of Gov't Employees, Local 1857, 38 F.L.R.A. 965, 971 (1990) ("Air Force" ). The Authority disagreed with the ALJ that § 7114(b)(4)(C) would have protected the document if the signatories had provided comments. Rather, according to the FLRA, their concurrences "do not pertain to the processing of the employee's grievance or to an unfair labor practice charge." Id. at 972. Therefore, it was held that the discipline coordination sheet should have been released under the Local 6 standard.
 
 
 34
 The Air Force also claimed that the Privacy Act and other statutes protected this document. Both the ALJ and the FLRA rejected this claim. Since "normal maintenance" and "reasonable availability" were conceded, the Authority ordered disclosure.
 
 
 35
 * * * * * *
 
 
 36
 The three agencies petition this court to vacate the disclosure orders in Local 6, Park Service and Air Force. They argue that some or all of the requested information was exempt under § 7114(b)(4)(C) and, if not, "unnecessary" under § 7114(b)(4)(B). No other objection is raised, and petitioners also concede that the FLRA correctly applied its construction of § 7114(b)(4)(C); i.e., if subsection (b)(4)(C) exempts only "guidance, advice, counsel, or training" for management officials relating to the process of collective bargaining, then the agencies agree that the information was not exempt. Conversely, the Authority does not argue that the requested information does not include "guidance," "advice," "counsel" or "training," but, rather, that the information is disclosable under subsection (b)(4)(B) and not otherwise exempt under subsection (b)(4)(C).
 
 II. ANALYSIS
 A. Introduction
 
 37
 The parties present conflicting analogies to this court. Petitioners argue that a disclosure request under § 7114(b)(4) is like a demand for government information under the Freedom of Information Act ("FOIA"): the government, as policymaker or employer, has the same interest in keeping secret its deliberations.[4] By contrast, intervenors (the unions) compare the agencies to private-sector firms: the deliberative-process privilege should not cover the government qua employer. We reject these analogies, and rest our decision on the language and structure of the Statute.
 
 
 38
 We do not understand § 7114(b)(4) to incorporate a FOIA-like exemption for any predecisional, deliberative document. Nor do we agree that any such document is readily discoverable, unless covered by the FLRA's narrow construction of § 7114(b)(4)(C). Rather, the correct interpretation of § 7114(b)(4) is intermediate between these two extremes. "Guidance," "advice," "counsel" or "training" for management officials that concerns the process of collective bargaining is unavailable to the union; other such "guidance," "advice," "counsel" or "training" is available when "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining."
 
 
 39
 This interpretation, of course, is controlled in part by the deference we owe the FLRA under Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We defer to interpretive choices that violate neither Congress' clear intent, nor reason. See, e.g., Overseas Educ. Ass'n v. FLRA, 876 F.2d 960, 964-65 (D.C.Cir.1989) (applying Chevron ); Department of the Treasury, IRS v. FLRA, 494 U.S. 922, 110 S.Ct. 1623, 1627, 108 L.Ed.2d 914 (1990) (same). It is petitioners' interpretation of § 7114(b)(4)(C), not the Authority's, that contravenes the language of that provision. Conversely, a narrow exemption for "guidance, advice, counsel, or training" concerning the process of collective bargaining is both consistent with that language, and reasonable.
 
 
 40
 Our analysis of § 7114(b)(4)(B) is somewhat more complicated. Petitioners urge a per se rule exempting all "guidance," "advice," "counsel" or "training." The FSLMRS does not compel such a rule, nor has the FLRA unreasonably failed to promulgate one. Indeed, the FLRA reasonably concluded that a per se rule under § 7114(b)(4)(B) would be overbroad. However, the FLRA's construction of § 7114(b)(4)(B) is flawed to the extent that the Authority views the subsection to cover both "necessary" and "relevant" information. This view is clearly incorrect with respect to information on "guidance," "advice," "counsel" or "training" for management officials. The FSLMRS makes only "necessary" documents available to the union, not merely "relevant" ones. Where the information sought pertains to "guidance," "advice," "counsel" or "training" for management officials, "necessity" means that there must be a particularized need in order to justify disclosure under subsection (b)(4)(B).
 
 B. Section 7114(b)(4)(C)
 
 41
 Contrary to the agencies' position in this case, we uphold the Authority's judgment that the exemption for "guidance," "advice," "counsel" or "training" under § 7114(b)(4)(C) cannot have the same breadth as the duty to furnish under § 7114(b)(4)(B). Subsection (b)(4)(B) speaks of information "necessary for ... negotiation of subjects within the scope of" collective bargaining; subsection (b)(4)(C) refers to information "relating to" collective bargaining. The clear terms of the statute indicate that subsections (b)(4)(B) and (C) are not coextensive with respect to information on "guidance," "advice," "counsel" or "training" for management officials. Thus, Congress cannot have intended a per se rule exempting all such information from disclosure under § 7114(b)(4). To hold otherwise would be to render meaningless the words "relating to" in subsection (b)(4)(C).
 
 
 42
 The FLRA made sense of § 7114(b)(4) by construing "relating to collective bargaining" in this context to refer to the "process" thereof. "Relating to" is an ambiguous term, and the structure of § 7114(b)(4) only makes clear that "relating to" cannot be synonymous with "necessary for ... negotiation of subjects within the scope of." In other words, the FLRA's interpretation of § 7114(b)(4)(C) lies within the zone of ambiguity, and our analysis moves to Chevron step two. Here, the issue is "reasonableness"; and surely the FLRA has made a reasonable interpretive decision.
 
 
 43
 "There is no evidence ... that [FSLMRS] departed from the basic assumption underlying collective bargaining in both the public and the private sector that the parties proceed from contrary and to an extent antagonistic viewpoints and concepts of self-interest." Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 107-08, 104 S.Ct. 439, 449, 78 L.Ed.2d 195 (1983) (internal quotation omitted). Moreover, these "antagonistic" parties are engaged in a process of "bargaining" or "negotiation." Each presents a self-interested demand or proposal, which the other evaluates from its own point of view. Necessarily, the bargainers are not obliged to reveal their strategies: the planned sequences of demands and proposals. For if the parties do have full strategic information, then the process of offer and counteroffer becomes superfluous, and the bargaining process is transformed into something else entirely. See Boise Cascade Corp., Paper Group, 279 N.L.R.B. 422, 432 (1985) (ALJ) (private-sector employer's failure to disclose bargaining strategy not unfair labor practice), aff'd, 279 N.L.R.B. 422 (1986); cf. Cook Paint & Varnish Co. v. NLRB, 648 F.2d 712, 722 (D.C.Cir.1981) (in pre-arbitration interview of employee, employer "may be prohibited from prying into union activities, or using the interview as an excuse to discover the union strategies for arbitration"); Mallick v. International Bhd. of Elec. Workers, 749 F.2d 771, 785 (D.C.Cir.1984) (union member can be refused examination of union records under Labor-Management Reporting and Disclosure Act if "disclosure of this information would be comparable to ... a union's disclosure of organizing strategy, negotiating plans, or other secrets"); Missouri Pac. Employees' Hosp. Ass'n, 251 N.L.R.B. 1547, 1549-50 (1980) (employees with access to employer's bargaining strategy are "confidential").
 
 
 44
 Yet, surely some information must be shared. Where one side has false beliefs about a mandatory subject of bargaining, the other may profit, but this hardly advances the common good. "In passing the [FSLMRS], Congress unquestionably intended ... to make the collective-bargaining process a more effective instrument of the public interest...." BATF, 464 U.S. at 107, 104 S.Ct. at 449. That "public interest" is misserved where unions agree to "conditions of employment" they misunderstand; or where they mistakenly concede that agreed-upon conditions are satisfied. An uninformed union "would be unable to properly perform its duties specified in the collective bargaining agreement and no meaningful bargaining could take place." San Diego Newspaper Guild v. NLRB, 548 F.2d 863, 866-67 (9th Cir.1977). At best, the unions and agencies should be commonly and truly informed about what they are demanding and proposing, during contract negotiation or administration.
 
 
 45
 In construing § 7114(b)(4)(C), the FLRA has adopted just this distinction between nonstrategic and strategic information: information about the subject of collective bargaining versus information about the bargaining itself. An agency's deliberation about the collective bargaining process is, precisely, its strategy. Thus, the Authority's construction of the statute--that section 7114(b)(4)(C) exempts from disclosure to the union information on "guidance, advice, counsel, or training" for management officials relating to the collective bargaining process--is wholly reasonable and prompts our deference.
 
 C. Section 7114(b)(4)(B)
 
 46
 1. The Factor of "Necessity"
 
 
 47
 The collective bargaining process arguably is optimized if unions and agencies have all relevant information about the subjects of collective bargaining. But this does not mean that agencies should or must disclose all such information. In the private sector, "[a]bsent special circumstances, 'relevance' is determinative of the duty to disclose," Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1092 (1st Cir.1981) (citation omitted); but "union interests in arguably relevant information [do not] always predominate over all other interests," Detroit Edison Co. v. NLRB, 440 U.S. 301, 318, 99 S.Ct. 1123, 1132, 59 L.Ed.2d 333 (1979). Similarly, the FSLMRS does not aim to optimize collective bargaining in compelling disclosure of all relevant information. Rather, "efficient government" remains an independent and, to some extent, conflicting purpose of the statute. Thus, section 7114(b)(4)(B) makes clear that agency disclosure must be tailored to multiple purposes. The provision entitles the union to "necessary," not to "relevant" information, i.e., something less than what full "discovery" might require.
 
 
 48
 Of course, "necessity [under § 7114(b)(4)(B) ] is a matter of degree." FLRA v. U.S. Dep't of the Treasury, Fin. Management Serv., 884 F.2d 1446, 1449-50 (D.C.Cir.1989) (opinion per Williams, J.), cert. denied, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990).[5] A statute that requires "necessity" implicitly recognizes countervailing interests, because a "need," by definition, is an interest of particular strength and urgency. If only pro-disclosure interests were material to § 7114(b)(4)(B), the statutory factor of "necessity" would be surplusage.
 
 
 49
 In weighing the employer's duty to furnish information under subsection (b)(4)(B), the requisite strength of the union's "need" will depend on the intensity of countervailing interests. "In some instances, the concepts of relevancy and necessity may, indeed, merge indistinguishably; whereas in others, they may remain distinct." Local 13, Detroit Newspaper Printing & Graphic Communications Union v. NLRB, 598 F.2d 267, 272 n. 7 (D.C.Cir.1979) (discussing private-sector disclosure). For example, in North Germany Area Council, Overseas Educ. Ass'n v. FLRA, 805 F.2d 1044, 1048 (D.C.Cir.1986), we spoke of the Statute's "liberal standard for assessing the relevancy of the requested information"; in that case there was no anti-disclosure interest. In a case of this sort, however, involving information on "guidance," "advice," "counsel" or "training" provided for management officials, we know that there is some countervailing anti-disclosure interest because of the existence of subsection (b)(4)(C).
 
 
 50
 Although, as we have already held, subsections (b)(4)(B) and (C) are not coterminous in their reach, the latter provision nonetheless suggests that, because collective bargaining presupposes that "the parties proceed from contrary and to an extent antagonistic viewpoints and concepts of self-interest," Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 108, 104 S.Ct. 439, 449, 78 L.Ed.2d 195 (1983) (internal quotation omitted), management often has a legitimate interest in preserving for itself, alone, information on "guidance," "advice," "counsel" or "training" provided for management officials. This interest is most weighty with respect to matters relating to the process of collective bargaining, which explains the categorical exemption found in § 7114(b)(4)(C); but the interest also exists, albeit to a lesser degree, in connection with all such information pertaining to subjects within the scope of collective bargaining. Cf. International Union of Elec., Radio & Mach. Workers v. NLRB, 648 F.2d 18, 28 (D.C.Cir.1981) ("[t]he interest a union might have in [certain predecisional, deliberative documents] must be balanced with the desirability of confidential, frank self-analysis on the part of the employer"); Oil, Chemical & Atomic Workers Local Union No. 6-418 v. NLRB, 711 F.2d 348, 362-63 (D.C.Cir.1983) ("where ... requested information is both relevant to a union's representational responsibilities and subject to an employer's legitimate confidentiality interest," the Board may "balanc[e] ... the parties' interests" in determining whether the employer breached its duty to bargain in refusing to disclose requested information). Thus, the employer's interest in protecting the sanctity of information on "guidance," "advice," "counsel" or "training" for management officials must be weighed against a union claim of necessity under § 7114(b)(4)(B).
 
 
 51
 In light of the foregoing considerations, we hold that "guidance," "advice," "counsel" or "training" for management officials that is claimed to be necessary for the "full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining" should be released upon union request only in those circumstances when the union has a particularized need for the information.
 
 2. Particularized Need
 
 52
 Petitioners contend that § 7114(b)(4)(B) should be interpreted to incorporate a per se rule that information on "guidance," "advice," "counsel" or "training" for management officials always is "unnecessary" for the full and proper discussion, understanding and negotiation of subjects within the scope of collective bargaining. This is a wholly specious claim, and we reject it. The FLRA has chosen to adjudicate the disclosure of such information on a case-by-case basis, and we defer to that choice. See American Fed'n of Gov't Employees, Local 1345 v. FLRA, 793 F.2d 1360, 1363-64 (D.C.Cir.1986) ("[t]he relevance of the requested data [under § 7114(b)(4)(B) ] is considered on a case-by-case basis").
 
 
 53
 Petitioners cannot plausibly make a Chevron step one argument--that information on "guidance," "advice," "counsel" or "training" is clearly excluded from § 7114(b)(4)(B). Here, as with their proposed construction of § 7114(b)(4)(C), they encounter a linguistic problem. The words "relating to collective bargaining" in subsection (b)(4)(C) would be surplusage if, as petitioners suggest, Congress' intent was to exempt all predecisional deliberation from union discovery. Even assuming, arguendo, that unions often will be unable to show a particularized need for such information, there always will be some exceptions. Case-by-case adjudication cures the overbreadth, and petitioners fail to show that the cure is not worth the cost. Thus, the FLRA was fully justified in adopting an approach which considers the application of subsection (b)(4)(B) on a case-by-case basis.
 
 
 54
 Furthermore, although the FLRA seemingly erred in failing to fully weigh the factor of "necessity," the Authority was nonetheless correct in suggesting that there are cases in which unions will be able to demonstrate a particularized need for certain categories of predecisional deliberation. Specifically, where "guidance," "advice," "counsel" or "training" concerns agency action against a particular employee, and the information is requested in connection with a grievance over that action, the union may well meet the particularized-need standard where the union has a grievable complaint covering the information. A statute or the contract may impose a duty on the agency regarding predecisional deliberation, and the duty may then ground a grievable claim of right in the employee or union. If so, disclosure normally should obtain.
 
 
 55
 For example, a collective bargaining agreement may establish an agency procedure for employee action. See 5 U.S.C. § 7106(b) (1988) ("[n]othing in this section shall preclude any agency and any labor organization from negotiating ... procedures which management officials of the agency will observe in exercising any authority under this section"). The agreed-upon procedure might be multi-level, pursuant to which subordinate officials might be required to make interim recommendations before a final decision issues. Such recommendations arguably could fall outside the category of "guidance," "advice," "counsel" or "training." But even if they are not so characterized, the recommendations should normally be disclosed to the union, assuming the union could grieve the agency's failure to follow the procedure. In such a case, the union would have a particularized need to know whether the agency has complied with the collective bargaining agreement.[6]
 
 
 56
 Another instance in which "guidance," "advice," "counsel" or "training" for management might be disclosable under § 7114(b)(4)(B) is when the disputed document creates a grievable action. A subordinate supervisor might counsel or warn an employee about allegedly poor work performance and then place a confirming written evaluation in the employee's personnel file. If the parties' agreement or existing practices make it clear that such evaluations are used to determine subsequent disciplinary action by superior management officials (pursuant to a scheme of "corrective" or "progressive" discipline), the employee surely would have a strong and valid claim to disclosure under § 7114(b)(4)(B). The union would need the information to determine whether the employee must be protected against the accumulation of negative evaluations in his or her personnel file (that ultimately may lead to disciplinary action), or to determine whether disciplinary action that has been taken is justified by the employee's record.[7] As we noted in American Federation of Government Employees, Local 1345 v. FLRA, 793 F.2d 1360 (D.C.Cir.1986),
 
 
 57
 The Union can hardly be expected to understand, evaluate or discuss management policies regarding employee discipline if management is unwilling to explain to the Union the circumstances surrounding the discharge of bargaining unit personnel. Moreover, the Union is properly concerned with its own status as the bargaining representative, which requires it to have access to information necessary to assess its responsibilities. In short, information concerning the dismissal of unit employees is clearly "necessary for full and proper discussion, understanding, and negotiation of subjects with[in] the scope of collective bargaining" under [§ 7114(b)(4)(B) ] of the Labor Statute.
 
 
 58
 Id. at 1361.
 
 
 59
 Conversely, where the union has no grievable complaint covering information on "guidance," "advice," "counsel" or "training," § 7114(b)(4)(B) normally will not require disclosure. If the union simply wants background information underlying some later decision, and the grievance only concerns objective constraints on agency action, then the predecisional text is probably "unnecessary"--indeed, it also may be irrelevant. Whatever the history of the justification asserted in the decisional document--whatever the agency's "real reason"--the union need not look beyond the four corners of that document, because only the objective truth of the justification is at issue.
 
 
 60
 In sum, we uphold the FLRA in adjudicating the disclosure of information on "guidance," "advice," "counsel" or "training" on a case-by-case basis, where such information is not exempted by § 7114(b)(4)(C). At least where the union has a grievable complaint covering the predecisional text, the union may have a particularized need for disclosure.
 
 D. The Instant Cases
 
 61
 In the instant cases, the FLRA has required disclosure without explaining the "necessity" of the requested information. Thus, we remand for adjudication under the particularized-need standard.
 
 
 62
 In each of the cases, it appears, the predecisional document or documents were formulated as part of an established agency process for employee action. If the employee or union has a grievable right to the process, specifically to the requested pre-decision, then disclosure should obtain. However, neither the administrative law judges in Local 6 and Air Force, nor the FLRA in affirming the judges' disclosure orders and reversing the decision of the Park Service judge against disclosure, found that the requested recommendations were required by the parties' bargaining agreement or their established practices. The issue was not addressed. Nor do we know whether the documents were placed in the employees' personnel files.
 
 
 63
 Rather, in Local 6, the FLRA provided an utterly conclusory argument for disclosure: "the Regional Director's recommendation was necessary for the Union to fully know and understand the basis underlying the [NLRB's] position." 38 F.L.R.A. at 517. This ground does not satisfy the applicable standard of § 7114(b)(4)(B).
 
 
 64
 In Air Force, the administrative law judge reasoned that the discipline coordination sheet was relevant to the union's recusal argument (that the disciplining official ought not have participated in earlier deliberations). However, the ALJ did not find that the union or employee had a colorable claim to such recusal, or that the union needed the document instead of the official's testimony at arbitration. In affirming, the FLRA merely observed that "the officials who sign the coordination sheet can significantly affect the proposed discipline." 38 F.L.R.A. at 971. This is inadequate to assess a request for disclosure under § 7114(b)(4)(B) with respect to information on "guidance," "advice," "counsel" or "training" for management officials.
 
 
 65
 Finally, in Park Service, the administrative law judge found disclosure unnecessary. He reasoned that the predecisional document is irrelevant if the material constraints on agency action are objective, and the union has no grievable complaint covering the document. The FLRA reversed, for the same conclusory reasons that were furnished in Local 6.
 
 
 66
 On remand, the FLRA need not reconsider its decision that the information in the requested documents was outside the § 7114(b)(4)(C) exemption: we uphold the Authority's interpretation of § 7114(b)(4)(C), and petitioners concede that the interpretation was rightly applied. Rather, the FLRA must decide whether some or all of that information is "necessary" under § 7114(b)(4)(B).
 
 III. CONCLUSION
 
 67
 We uphold the FLRA's construction of § 7114(b)(4)(C), but hold that an agency need not disclose information on "guidance," "advice," "counsel" or "training" for management officials under § 7114(b)(4)(B) unless the union has a "particularized need" for such information. Because the Authority has failed to apply this standard to the unions' informational requests, we vacate the decisions here reviewed and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 See generally 1 THE DEVELOPING LABOR LAW: THE BOARD, THE COURTS AND THE NATIONAL LABOR RELATIONS ACT 606-29 (Charles J. Morris et al. eds., 2d ed. 1983 & 1982-88 Supp.)
 
 
 [2]
 [N]othing in this chapter shall affect the authority of any management official of any agency--
 ... (2) in accordance with applicable laws--
 (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees....
 5 U.S.C. § 7106(a) (1988).
 
 
 [3]
 As the administrative law judge noted, the memorandum was not provided ad hoc, but as part of an established procedure. "[B]efore decisions are made in Washington by [the NLRB] which affect a regional office, it is customary to require a written recommendation from the region." 38 F.L.R.A. at 533
 
 
 [4]
 Petitioners do not argue that FOIA itself governs the unions' informational requests, in the instant cases. "The right to data under Section 7114(b) ... is not controlled by FOIA." National Treasury Employees Union, 8 F.L.R.A. 547, 556 (1982)
 
 
 [5]
 As Chief Justice Marshall famously observed:
 It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense--in that sense which common usage justifies. The word "necessary" is of this description. It has not a fixed character peculiar to itself. It admits of all degrees of comparison....
 M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 414, 4 L.Ed. 579 (1819).
 
 
 [6]
 This example also refutes petitioners' argument that the subpoena provision of FSLMRS requires a per se rule under § 7114(b)(4)(B). 5 U.S.C. § 7132 (1988) states: "No subpena shall be issued under this section which requires the disclosure of intramanagement guidance, advice, counsel, or training within an agency or between an agency and the Office of Personnel Management." Where an employee has a right to a particular pre-decision, that "guidance," "advice," "counsel" or "training" is no longer "intramanagement." The decision is for the employee, not just for other agency officials. It is no more "internal" than an unpublished opinion by a federal court
 Clearly § 7132 is irrelevant to § 7114(b)(4)(C), because that subsection does not require disclosure of any data. In this case, it is only § 7114(b)(4)(B) that requires disclosure, and then only with respect to matters necessary for discussion of subjects within the scope of collective bargaining. Section 7132 does not conflict with § 7114(b)(4)(B), however, because § 7132 only protects "intramanagement guidance, advice, counsel, or training." Documents that are strictly "intramanagement" normally will not be discoverable under § 7114(b)(4)(B).
 
 
 [7]
 Nor would the evaluation be strictly "intramanagement" under § 7132. See note 6 supra